# Exhibit 1

LEXSEE 2006 U.S. DIST. LEXIS 44778

DONA J. JACKSON, Plaintiff, vs. NEW YORK STATE, et al., Defendants.

Civ. Action No. 5:03-CV-0577 (HGM/DEP)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

2006 U.S. Dist. LEXIS 44778

June 30, 2006, Decided

**SUBSEQUENT HISTORY:** Related proceeding at *Jackson v. New York State*, 2007 U.S. Dist. LEXIS 8453 (W.D.N.Y., Feb. 6, 2007)

**PRIOR HISTORY:** *Jackson v. New York*, 381 F. Supp. 2d 80, 2005 U.S. Dist. LEXIS 16478 (N.D.N.Y, 2005)

**COUNSEL:** [*1] DONA J. JACKSON, PLAINTIFF, Pro se.

FOR DEFENDANTS: DOUGLAS GOGLIA, ESQ., Assistant Attorney General, OFFICE OF THE NEW YORK STATE, ATTORNEY GENERAL, State of New York, Albany, New York.

**JUDGES:** David E. Peebles, U.S. Magistrate Judge.

**OPINION BY:** David E. Peebles

**OPINION**

DECISION AND ORDER

Plaintiff Dona J. Jackson, a *pro se* though not inexperienced litigant, has commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging deprivation of her constitutional rights. In her complaint, as amended, plaintiff identifies as defendants various individuals, many of whom are past or present New York State Police ("NYSP"), by name, and additionally references several John and Jane Doe defendants whose identities are not currently known to her. Plaintiff's claims have as their genesis defendants' refusal to intervene on her behalf in an ongoing property dispute between Ms. Jackson and her neighbors. According to the plaintiff, the actions of the NYSP defendants and others ultimately escalated from that point, and have since included acts of excessive force and retaliation, taken as part of a conspiracy to deprive her of her constitutional rights. Plaintiff's [*2] complaint sets forth a variety of federal and state common law claims, and seeks recovery of compensatory damages of more than $ 25 million as well as other forms of legal and equitable relief.

Currently pending before the court are several cross-motions. For their part, defendants seek transfer of this matter to the Western District of New York where, they assert, plaintiff has commenced other actions including a closely related case against various defendants growing out of many of the same incidents which form the basis of her claims in this matter. Plaintiff, in turn, requests an order compelling discovery in order to assist her in ascertaining the identity of the unnamed defendants and to serve various of those whose identities, but not addresses, are known to her; an order disqualifying Assistant New York State Attorney General Douglas J. Goglia, Esq. from representing the defendants in the case; and appointment of a special prosecutor and/or convening of a grand jury to investigate her allegations.

For the reasons set forth below, I deny plaintiff's motions to disqualify counsel and for appointment of a special prosecutor and/or convening of a special grand jury. Additionally, [*3] finding that the interests of justice and judicial economy would be best served by effectuating such a transfer, in my discretion I will grant defendants' motion to transfer this action to the Western District of New York, which is far better positioned to examine the interplay between plaintiff's claims in this action and those involved in a prior case commenced in that court, but later dismissed based upon her failure to prosecute and to comply with the court's order, and will defer a ruling on plaintiff's motion to compel discovery for review by that court.

I. BACKGROUND [1]

    1   While appreciating that defendants will undoubtedly deny many of the allegations set forth in plaintiff's complaint, as amended, and some may well prove to be unfounded, given the pro-

Case 1:07-cv-03747-PKC    Document 11-2    Filed 10/05/2007    Page 3 of 9

Page 2
2006 U.S. Dist. LEXIS 44778, *

cedural posture of this action the following recitation is drawn from the allegations set forth in plaintiff's third amended complaint, the contents of which are accepted as true solely for purposes of the instant motion. Because of the nature of the pending motions those allegations, which are diverse and extensively stated in a fifty-eight page, 183 paragraph verified complaint which is exceedingly difficult to comprehend, the salient facts have been summarized but not comprehensively set forth in this opinion.

[*4] Plaintiff is and was at all times relevant to her claims a resident of the Town of Conquest, which is located in Cayuga County, and within this district. Third Amended Complaint (Dkt. No. 119) P35. Plaintiff's complaint describes a course of events extending back over a period of thirteen years, involving various employees of the New York State Police as well as other state and local governmental employees and including conduct occurring both here and in the Western District of New York. At the heart of plaintiff's claims are efforts by her to elicit the assistance of the NYSP in connection with a dispute with her neighbors, beginning in 1993. *Id.* PP88-92. Plaintiff alleges that in March and April of 1995 she met with representatives of the NYSP at barracks located in Wolcott, New York, and within the Western District of New York, to discuss the matter, to no avail. *Id.* PP94-98.

Piecing together the chronology of later relevant events from plaintiff's allegations is difficult. Plaintiff's complaint mentions various more recent incidents, including picketing on June 10, 1999, apparently resulting in her being cited for a violation of *N.Y. Vehicle and Traffic Law § 1202* [*5] and subjected to resulting criminal proceedings in Wayne County before a Town of Sodus Justice, and leading to a guilty verdict which, she maintains, resulted from a violation of her constitutional rights and should be set aside. *Id.* PP52-63. Plaintiff's complaint also references an arrest, which she maintains was in retaliation for her having exercised protected rights, in or about May of 2001 leading to the filing of criminal charges against her for resisting arrest and criminal contempt in the second degree. [2] Third Amended Complaint (Dkt. No. 119) P64. After being released on bail, according to plaintiff's complaint, those charges were ultimately dismissed as "false & baseless." Third Amended Complaint (Dkt. No. 119) P66.

2 While plaintiff's complaint does not specify where that arrest occurred it appears, by virtue of the fact she was taken before Patricia Axsmith, a Town of Farmington Justice, that the arrest and ensuing prosecution occurred in Ontario County, and thus within the Western District of New York. *See* Third Amended Complaint (Dkt. No. 119) P66.

[*6] On May 17, 2000 plaintiff was confronted by two NYSP officers near the Finger Lakes Mall, located in Auburn, New York. *Id.* P75. During the course of that encounter, plaintiff alleges, she was harassed and retaliated against for exercising her *First Amendment* rights. *Id.* PP75-80.

Lastly, plaintiff's complaint alleges that on or about May 15, 2000 her home was the subject of an unconstitutional search and invasion of privacy at the hands of a named NYSP officer and another unspecified individual. Third Amended Complaint (Dkt. No. 119) PP81-82.

Plaintiff's third amended complaint sets forth twelve causes of action including, *inter alia,* claims 1) for false arrest and malicious prosecution; 2) for retaliation; 3) that defendants engaged in a conspiracy to cover up misconduct and obstruction of justice; 4) under *Monell* against the municipal defendants; [3] 5) of assault and battery; 6) of false imprisonment; 7) of intentional infliction of emotional distress; 8) of negligent infliction of emotional distress; 9) of negligent hiring and retention of employees; 10) of fraud and perjury; 11) under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act [*7] ("RICO"), *18 U.S.C. § 1961 et seq.*; and 12) grounded in *respondeat superior.* Plaintiff's amended complaint requests a variety of relief, including compensatory and punitive damages. [4]

3 *Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).*

4 Plaintiff's complaint has attached to it an extensive collection of various documents denominated by her as "Plaintiff's Composite Exhibit A". The court has not addressed the propriety of attaching that exhibit, principally in deference to plaintiff's *pro se* status and out of a desire to move the case forward without further undue delay.

II. PROCEDURAL HISTORY

A. Plaintiff's Western District of New York Action

In 2001 plaintiff commenced a civil rights action in the Western District of New York, entitled *Jackson v. Axsmith,* 01 CV-6382T (W.D.N.Y. filed 2001). A comprehensive, side-by-side comparison of the allegations set forth in plaintiff's complaints in the [*8] two actions is difficult for a variety of reasons, including their sheer volumes, lack of cogent organization, and argumentative nature, further complicated by the fact that in *Axsmith*

Case 1:07-cv-03747-PKC    Document 11-2    Filed 10/05/2007    Page 4 of 9

Page 3
2006 U.S. Dist. LEXIS 44778, *

plaintiff apparently filed several different complaints setting forth allegations with regard to various sets of defendants in the action. It is clear, however, that there is a substantial overlap in both the facts giving rise to her claims in the two actions as well as the defendants and causes of action implicated.[5]

> 5   Among the defendants named by plaintiff in *Axsmith* and also identified as defendants in the instant action are the New York State Police and the agency's Superintendent, James W. McMahon, as well as NYSP Lieutenants Francis S. Coots and Michael J. Cerretto. Additionally, while she is not named as a defendant in this case, Patricia Axsmith, the lead defendant in the Western District of New York suit, is also referenced prominently in plaintiff's complaint in this action. *See* Amended Complaint (Dkt. No. 119) P66.

[*9] On November 24, 2002 plaintiff moved in *Axsmith* for an order directing the United States Marshal to serve process on the various named defendants. *See* Goglia Decl. (Dkt. No. 123) Exh. M. By order dated October 31, 2001, District Judge Charles J. Siragusa denied that application, directing instead that the plaintiff herself arrange for service of the summons and complaint upon the various defendants within 120 days. *Id.* Exh. N. Plaintiff's apparent failure to serve the defendants, as directed in that order, led to the issuance by that court of an order to show cause why the action should not be dismissed based upon her failure to prosecute. Goglia Decl. (Dkt. No. 123) Exh. O. After considering a response to that order, filed by the plaintiff on November 24, 2002, Chief Judge David G. Larimer issued an order dated December 2, 2002 dismissing plaintiff's complaint in that action for failure to comply with Judge Siragusa's order, and to prosecute.[6],[7] Goglia Decl. (Dkt. No. 123) Exhs. P, Q.

> 6   A subsequent appeal of that order was dismissed by the United States Court of Appeals for the Second Circuit on May 13, 2003, four days after commencement of this action, based upon its lack of palpable merit. Goglia Decl. (Dkt. No. 123) Exh. R.

[*10]
> 7   Plaintiff has commenced at least two other actions in the Western District, including *Jackson v. City of Canadaigua*, 03-CV-06179 (DJL) (W.D.N.Y., filed 2003) and *Jackson v. Heidelberg Digital*, 2005 U.S. Dist. LEXIS 6350, 02-CV-06536 (JWF) (W.D.N.Y., filed 2003), and additionally has joined as a plaintiff in yet another action within that judicial district, *Robinson, et al. v. Eastman Kodak*, 02-CV-06204 (MAT) (W.D.N.Y., filed 2002).

B. This Action

Plaintiff, at the time represented by an attorney who has since been relieved as her counsel of record, commenced this action on May 9, 2003. Since the filing of plaintiff's initial complaint the case has not materially progressed past the pleading stage, despite its tortured history. Following the filing by plaintiff of a second amended complaint the defendants thus far served in the action, all represented by the Office of the New York State Attorney General, moved seeking its dismissal under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* on a variety of bases. That motion resulted in the issuance on August 11, 2005 of [*11] a decision and order by Senior District Judge Howard G. Munson. *See* Dkt. No. 99. In that order, *inter alia*, Judge Munson dismissed plaintiff's civil RICO and conspiracy claims as well as all claims purported to be interposed on behalf of plaintiff's son, but denied defendants' dismissal motion in all other regards. *Id.* In that decision, Judge Munson also rejected an application by plaintiff to disqualify the Office of the New York State Attorney General from acting as counsel for the defendants, pointing out that because they appear to have been sued under *42 U.S.C. § 1983* for acts committed within the scope of their employment, under *N.Y. Public Officer's Law § 17* the defendants were entitled to representation by the Attorney General. *See* Decision and Order (Dkt. No. 99) at 3.

Presently pending before the court are four separate motions. The most recent round of filings was initiated on March 20, 2006 by plaintiff's application for a restraining order and/or a protective order. Dkt. No. 115. In that document plaintiff requests that the court direct the appointment of a special prosecutor and/or impanelment of a federal [*12] grand jury to investigate the allegations set forth in her complaint. *See id.* In a second, separate though somewhat related motion filed on April 5, 2006, plaintiff seeks disqualification of Assistant Attorney General Goglia from representing the defendants based upon his conduct during the course of the litigation. Dkt. No. 120.

The third of the most recent motions to be filed with the court was initiated on April 11, 2006 by defendants' filing of a cross-motion seeking transfer of the case to the Western District of New York, pursuant to *28 U.S.C. § 1404(a)*. Dkt. No. 123. In their motion, defendants argue that consideration of the factors which inform the analysis of whether to transfer a case under *section 1404(a)* favors the Western District of New York, despite plaintiff's choice of this forum for bringing her suit. *See id.* The last and final motion now before the court was filed by the plaintiff on May 12, 2006, seeking an

Case 1:07-cv-03747-PKC     Document 11-2     Filed 10/05/2007     Page 5 of 9

Page 4
2006 U.S. Dist. LEXIS 44778, *

order compelling the defendants to identify various of the defendants sued by her as Jane and John Does and additionally to provide her with addresses of various of the named defendants for purposes of effectuating service. Dkt. [*13] No. 124. All four of the pending cross-motions are opposed.

III. DISCUSSION

A. Venue Transfer [8]

[8] While as a magistrate judge I lack the authority, absent consent of the parties, to order dismissal of an action, a venue transfer is regarded as a non-dispositive matter which falls within the scope of the my jurisdiction under 28 U.S.C. § 636(b)(1)(A). See White Mop Wringer Co. of Canada Ltd. v. BT Capital Partners, Inc., 1997 U.S. Dist. LEXIS 6130, No. 95-CV-565, 1997 WL 222380, at *1 (N.D.N.Y. Apr. 29, 1997) (Pooler, J.); Pemrick v. Stracher, 1992 U.S. Dist. LEXIS 3729, No. 90-CV-849, 1992 WL 697636, at *1 (N.D.N.Y. Mar. 27, 1992) (McAvoy, C.J.); see also Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc., 2000 U.S. Dist. LEXIS 19571, No. CV 99-2491, 2000 WL 33155640 (E.D.N.Y. Sept. 15, 2000) (decision of magistrate judge ordering a venue transfer under section 1404(a)); Tenen v. Winter, 15 F. Supp.2d 270 (W.D.N.Y. 1998) (decision by district judge affirming the order of a magistrate judge denying a motion for a change of venue).

[*14] The statutory provision under which defendants' venue transfer motion is brought allows that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As the latter portion of that provision implies, in order to transfer a case under section 1404(a) the proposed transferee court must have the ability to exercise personal jurisdiction over the defendants, and additionally venue must be appropriate in that forum. Oriska Ins. Co. v. Brown & Brown of Texas, Inc., 2005 U.S. Dist. LEXIS 6623, No. 02-CV-578, 2005 WL 894912, at *4 (N.D.N.Y. Apr. 8, 2005) (Hurd, J.) (citations omitted); Viacom Int.'l, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (citations omitted). Since under the applicable federal and state rules the defendants named by the plaintiff are equally amenable to suit in any district within New York, and it appears that venue in the Western District of New York would be appropriate under 28 U.S.C. § 1391(b)(1), (2) and (3), this initial threshold [*15] requirement appears to have been met.

Motions for transfer under section 1404(a) are addressed to discretion of the court, and are informed by overarching notions of convenience and fairness. Linzer v. EMI Blackwood Music, Inc., 904 F.Supp. 207, 216 (S.D.N.Y. 1995) (citations omitted). The burden of demonstrating the desirability of transfer lies with the moving party; in considering such a motion, a court should not disturb a plaintiff's choice of forum unless the defendants make a "clear and convincing" showing that the balance of convenience weighs strongly in favor of defendants' choice of venue. Id. at 216-17 (citations omitted); see also Excelsior College v. Frye, 306 F. Supp.2d 226, 231 (N.D.N.Y. 2004) (Hurd, J.). Although an important factor, however, it should be noted that plaintiff's choice of forum is far less outcome determinative in the analysis under section 1404(a) than it was under the doctrine of forum non-conveniens. See Meteoro Amusement Corp. v. Six Flags, 267 F. Supp. 2d 263, 279 (N.D.N.Y. 2003) (McCurn, J.) (citing, inter alia, Pellegrino v. Stratton Corp., 679 F. Supp. 1164, 1167 (N.D.N.Y. 1988)). [*16]

The factors generally identified by the courts as relevant when addressing a section 1404(a) transfer motion include 1) the place where the operative facts occurred; 2) convenience of the parties; 3) the convenience of witnesses; 4) the relative ease of access to sources of proof; 5) the availability of process to compel attendance of unwilling witnesses; 6) the plaintiff's choice of forum; 7) the forum's familiarity with the governing law; and 8) trial efficiency and the interests of justice. [9] Viacom, 774 F.Supp. at 867-68 (citations omitted); see Excelsior College, 306 F. Supp.2d at 231.

[9] Some cases also cite the relative means of the parties as an additional consideration. Indymac Mortg. Holdings, Inc. v. Reyad, 167 F. Supp. 2d 222, 239-40 (D. Conn. 2001).

The core determination to be made under section 1404(a) involves identifying the center of gravity of the litigation; a key component of that inquiry is focused upon the convenience of witnesses. Viacom, 774 F.Supp. at 868 [*17] (citations omitted). Courts routinely transfer cases when the principal events occurred, and accordingly the key witnesses are located, in another district. Id. (citing Computer Horizons Corp. v. Knauer, 483 F.Supp. 1272 (S.D.N.Y.1980)). Where the operative facts of the case have little connection with the district where the suit is pending, the importance of the plaintiff's forum choice as a factor is considerably lessened. Id.

Because both of the fora now under consideration are located within New York, the factors addressed to access to necessary evidence, including the availability of process to compel the attendance of unwilling witnesses, and familiarity by the court with governing law

Case 1:07-cv-03747-PKC    Document 11-2    Filed 10/05/2007    Page 6 of 9

Page 5
2006 U.S. Dist. LEXIS 44778, *

are neutral, and do not come into play in connection with defendants' venue transfer motion. The remaining elements, however, must be weighed in order to determine whether there is a sufficient basis, as defendants now argue, to override plaintiff's selection of this court as her forum of choice.

1. Operative Facts

Plaintiff's claims derive from incidents alleged to have occurred in both this district and in the Western District of New York. [10] It is true, for example, [*18] that various of the relevant events occurred at or near plaintiff's place of residence, which is located within this district. Many of those events, however, date back as far as 1993. [11] Other incidents alleged in plaintiff's complaint as giving rise to her claims, including most of the more recent, are alleged to have occurred in the Western District of New York, including in Wayne and Ontario Counties.

> 10  Plaintiff's complaint -- which is verified, and thus stated under penalty of perjury -- alleges that "[a]ll matters complained of herein occurred in the Northern District of New York[.]" Third Amended Complaint (Dkt. No. 119) P14. A review of plaintiff's complaint, which is both comprehensive and addresses a multitude of incidents, however, reveals that this statement is patently untrue. By way of example, among the first events referenced in plaintiff's complaint is an incident involving picketing by her on June 10, 1999 "near the vicinity of Sodus, New York." *Id.* P52. That event therefore appears to have occurred in the Western District of New York, as did many of the other incidents referenced in her complaint as forming a basis for her constitutional claims.

[*19]
> 11  In all likelihood any claims arising out of the acts dating back to the 1990's are barred by the applicable three year statute of limitations governing such civil rights claims. *See Owens v. Okure,* 488 U.S. 235, 249-50, 109 S. Ct. 573, 582, 102 L. Ed. 2d 594 (1989); N.Y. Civil Practice Law and Rules § 214(5); *see also Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir. 1997) (citing *Owens*).

In their motion, defendants seize upon this split of events between the two districts asserting, in essence, that because of this circumstance plaintiff cannot demonstrate that most of the operative facts occurred in the Northern District of New York. Defendants' argument in this regard overlooks the fact that a plaintiff's choice among competing venues must not necessarily be the district with the most contacts, as between any potential venue, but instead merely one having sufficient contacts which can be considered as comprising "a substantial part" of her claim. *Kirkpatrick v. Rays Group,* 71 F. Supp. 2d 204, 213 (W.D.N.Y. 1999).

Based upon my review [*20] of plaintiff's complaint it appears that both the Northern District of New York and the Western District of New York qualify under this test as fora with contacts with substantial parts of plaintiff's overall claim. Accordingly, this factor does not weigh in favor of either party, and alone does not serve to counter plaintiff's forum selection.

2. Convenience of Parties

This factor also does not appear to favor either of the parties to any significant degree. Plaintiff is a resident of this district, and thus it is convenient for her as a forum in which to litigate. As defendants assert, the Western District is extremely convenient for them, particularly since most of the law enforcement personnel who are named as defendants reside or work in the Western District Counties of Wayne, Monroe, Seneca and Ontario. That district, as defendants point out, also appears to be relatively convenient for the plaintiff, particularly in view of the fact that she has filed other actions in that court.

It is said that the convenience of the parties plays less of a role when the choice is between two contiguous districts, particularly when the relevant events took place at or near the border [*21] separating the two. In *Indymac Mortgage Holdings, Inc.,* for example, the boundary of the district of plaintiff's chosen forum, the District Court of Connecticut, was a mere nineteen miles from defendants' residence in New Jersey and thus the distance the defendant would be expected to travel to defend was regarded by the court as entirely reasonable. *Indymac Holdings, Inc.,* 167 F.Supp.2d at 239. In this instance, as in *Indymac Holdings,* the convenience of the parties plays only an insignificant role, and is certainly not pivotal in addressing whether plaintiff's choice of forum should be sustained.

3. Convenience of Witnesses

It has been said that aside from the plaintiff's choice of forum, the convenience of non-party witnesses is perhaps the single most important factor in determining whether a venue transfer is warranted. *Viacom,* 774 F.Supp. at 868. In this instance plaintiff's complaint identifies, though does not name as defendants, various public officials and law enforcement personnel including, for example, three town Justices who seemingly reside and work in the Western District of New York. *See* Third Amended Complaint (Dkt. [*22] No. 119) P66. Also

Case 1:07-cv-03747-PKC    Document 11-2    Filed 10/05/2007    Page 7 of 9

Page 6
2006 U.S. Dist. LEXIS 44778, *

prominently named in plaintiff's complaint, and likely to be a critical witness, is the Wayne County District Attorney and other attorneys within his office, all of whom work in the Western District. *See, e.g., id.* P61. It therefore appears to this court that the convenience of the witnesses, as an important factor, weighs in favor of the requested transfer.

4. Plaintiff's Choice of Forum

Undeniably, of the various controlling factors which play roles in the *section 1404(a)* analysis, plaintiff's choice of forum is paramount; as one court has noted, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed'". *Bridgeport Machines, Inc. v. Alamo Fire Works, Inc., 76 F. Supp.2d 214, 216 (D. Conn. 1999)* (quoting *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947))*. A plaintiff's choice of forum should be accorded less weight only where that forum is neither plaintiff's home nor the place with the operative facts occurred. *Id. at 217* (citing *Hill v. Golden Corral Corp., 1999 U.S. Dist. LEXIS 7994, No. 98-CV-7872, 1999 WL 342251, at *3 (E.D.N.Y. May 21, 1999)*; [*23] *see also Excelsior College, 306 F. Supp.2d at 231*.

Since plaintiff resides in this district, and at least some of the operative events took place here, this factor appears to support plaintiff's choice of venue. There are, however, several overriding considerations which minimize the significance of that choice, including the fact that many of the relevant events occurred in the Western District of New York, and several critical, non-party witnesses reside and/or work there.

5. Trial Efficiency and the Interests of Justice

This somewhat intangible factor, requiring examination into matters of trial efficiency and the interests of justice, strongly favors transfer of this case to the Western District of New York. As the defendants have noted, an action commenced by the plaintiff in that jurisdiction involving many of the same claims and operative facts, as well as some of the same defendants, as in this action was dismissed based upon her failure to prosecute. Surely, the Western District of New York is far better positioned to assess the impact of its dismissal for failure to prosecute upon the various claims asserted by the plaintiff in this action, thus making [*24] it more judicially efficient to have the case transferred to that court.

12 While the order to show cause leading to that dismissal suggested that it would be with prejudice, if granted, Goglia Decl. (Dkt. No. 123) Exh O, Chief District Judge Larimer's subsequent order did not specify whether the dismissal was with or without prejudice. *See id.* Exh. Q.

Plaintiff's commencement of other actions, as well as her joinder as a plaintiff in yet another, within the Western District belies any potential contention that for her it is an inconvenient forum in which to litigate. In that regard, I take judicial notice of the fact that when measured from plaintiff's place of residence the distances to Rochester, one of the locations in which the Western District of New York holds court, and Syracuse, where her case is currently being litigated in this district, are not appreciably different. It is also noteworthy that according to publicly available statistics, for the one year period ending September 30, 2005 the [*25] average time from filing to disposition of a civil case in the Northern District of New York was twelve months, whereas in the Western District that average time was ten and two-tenths. Accordingly, it is reasonably anticipated that the parties could obtain a prompter resolution of their dispute in the Western District of New York than in this court.

For these reasons, despite her choice of forum and the various factors which appear to weigh equally in favor of either district, I find that the totality of circumstances of this case trump plaintiff's choice of forum, which should be minimized as a controlling factor, and will therefore exercise my discretion in favor of ordering that this action be transferred to the Western District of New York.

B. Disqualification of Attorney Goglia

As part of her motion seeking appointment of a special prosecutor and/or federal grand jury, plaintiff requests that the Office of the New York State Attorney General be enjoined from representing the defendants, and that she be issued an order of protection precluding Assistant Attorney General Douglas J. Goglia, Esq., from contacting her. Dkt. No. 115. Those requests are fortified in a later submission [*26] in which plaintiff "demands" the removal of Assistant Attorney General Goglia. Dkt. No. 120.

The decision to deprive a litigant of representation by an attorney of his or her choosing, particularly when there is no actual or potential conflict of interest apparent, is not to be undertaken lightly, but instead only upon a showing of compelling circumstances. *See Bd. of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1245-46 (2d Cir. 1979)*. Based upon a careful review of plaintiff's allegations I find no indication that there was any actual or potential conflict of interest in the Office of the New York State Attorney General representing the defendants, nor do I find anything among plaintiff's allegations,

Case 1:07-cv-03747-PKC    Document 11-2    Filed 10/05/2007    Page 8 of 9

Page 7
2006 U.S. Dist. LEXIS 44778, *

though slightly troubling in certain aspects, which rises to a level sufficient to support such drastic action.

Significantly, this is not the first effort by the plaintiff to have defendants' attorney removed from the case. A prior application by the plaintiff seeking removal of the New York Attorney General from the case was denied by Senior District Judge Munson. Dkt. No. 99. The court has been presented with no new circumstances not known at the time of Judge [*27] Munson's ruling, and certainly none which rise to the level sufficient to deprive the defendants of counsel of their choosing. Instead, plaintiff simply points to actions and communications on the part of Attorney Goglia which she refers to in unflattering and incendiary terms, accusing him of being threatening and rude, and characterizing his activities as tantamount to domestic terror. See, e.g., Jackson Aff. (Dkt. No. 115) P6.

The court has carefully reviewed plaintiff's allegations, particularly in view of their nature as calling into question the professional conduct of a member of this court's bar, and finds nothing to warrant the extreme relief now requested. Plaintiff must understand that as parties being sued by her, the defendants are entitled to representation and that representation must, under the Code of Professional Responsibility, be zealous, though within the bounds of propriety under that Code and other guiding principles. *Jawa v. Rome Developmental Disabilities Servs. Office, 1999 U.S. Dist. LEXIS 6530, No. 97-CV-1346, 1999 WL 288661, at \*4-\*5 (N.D.N.Y. May 5, 1999)* (Munson, S.J.). While Ms. Jackson challenges certain of Attorney Goglia's actions, including comments made [*28] during recorded telephone conversations characterized by her as rude and contentious, it is not the court's obligation to police the manners of attorneys that practice before the bar of this court. [13]

> 13  This opinion and my declination of plaintiff's invitation to disqualify defendants' counsel from the case should not be construed as condoning any attorney conduct which might be characterized as uncivil. I note, for example, that during a recorded telephone conference, plaintiff alleges that Attorney Goglia stated, "[l]ady O.K. you know what your [sic] crazy, so I'm not going to talk to you anymore." Jackson Aff. (Dkt. No. 115) Exh. A, lns. 32-33. I expect everyone, *pro se* litigants and attorneys alike, who practice in this court to exercise civility in litigation in accordance with the New York State Bar Association Guidelines on Civility in Litigation. To the extent that Attorney Goglia may have crossed that line, quite possibly out of frustration, he is reminded of the court's expectations in this regard. It should be noted that in a communication to the court Attorney Goglia has apologized "for inappropriately expressing [his] frustrations in dealing with plaintiff." See Goglia Letter dated April 11, 2006 (Dkt. No. 122).

[*29] Based upon my review of the parties' submissions, I find no reason to revisit Senior District Judge Munson's determination that the defendants are entitled to representation of their choice, including by the New York State Attorney General, and will therefore deny plaintiff's application to disqualify Attorney Goglia from representing them in this action. Similarly, because of necessity defendants' counsel must communicate with the plaintiff in connection with this action, given her *pro se* status, even assuming this court were empowered to grant such relief I deny plaintiff's request for an order of protection.

C. Appointment of Special Prosecutor

Citing no legal authority, instead apparently relying on the court's inherent authority, plaintiff requests that I initiate or prompt an investigation by an independent person or panel and/or federal grand jury regarding the matters asserted in her complaint. [14] In making this request the plaintiff, while purporting to appreciate the separation of powers established under the United States Constitution, overlooks that very principle. In essence, plaintiff asks this court to abandon its role as neutral arbiter and instead assume [*30] the role of an investigator or prosecutor.

> 14  In her affidavit plaintiff suggests that the American Bar Association should be commissioned "to conduct an investigation into the alleged organized hit man/R.I.C.O./racketeering/domestic terrorist threats, crimes, etc. that [attorney] Goglia inflicted upon [the plaintiff]" and requests that he "be banned from every [sic] practicing law in this state &/or any other state/territory." Jackson Aff. (Dkt. No. 115) P9. Aside from these conclusory assertions, plaintiff cites no facts to support her inflammatory allegations.

To the extent that the plaintiff seeks appointment of a special prosecutor, she cites no authority for the request, and it does not appear to be properly addressed to the inherent powers of the court. See *In re Grand Jury Application, 617 F.Supp. 199, 200 n.1 (S.D.N.Y. 1985)*. In any event, even were this court vested with such inherent authority I would not exercise it, having been presented with no evidence, as distinct from [*31] conclusory statements which while shocking, contain no supporting factual allegations, showing that federal and state law enforcement and prosecuting officials are not well positioned to examine plaintiff's allegations.

Plaintiff also seeks the impanelment of a special grand jury. I note, in that regard, that impanelment of special grand juries is a function reserved to the court, which has the discretionary authority to convene or discharge a grand jury. *Petition of A&H Transp., Inc., 319 F.2d 69, 71 (4th Cir. 1963)*. While plaintiff's motion does specify a legal basis for the relief sought, it could be construed as implicating the provisions of *18 U.S.C. § 3332(a)*, which in essence requires the United States Attorney to present information regarding criminal activity to a special grand jury, upon request, and seeking mandamus relief requiring the United States Attorney to take such measures in connection with her allegations. *See Simpson v. Reno, 902 F. Supp. 254, 257 (D.D.C. 1995); In re Grand Jury Application, 617 F. Supp. at 201-06*.

In districts inhabited by at least more four million people, a special [*32] grand jury must be empaneled at least once every eighteen months. *18 U.S.C. § 3331; see Simpson, 902 F. Supp. at 257*. In other districts, including the Northern District of New York, such special grand juries are empaneled at the discretion of the Attorney General. *See id.* There is no special grand jury currently sitting in the Northern District of New York and, because the decision to empanel one is entirely discretionary, the relief which plaintiff seeks relief cannot be awarded by the court by order in the nature of mandamus. [15] *Simpson, 902 F.Supp. at 256-57*.

---

15  It should be noted that even if the requirements of *section 3332(a)* were met, it would not mean that plaintiff would be entitled to appear before the special grand jury; instead, it would simply require presentment of the information supplied by the plaintiff to the special grand jury empaneled. *Simpson, 902 F.Supp. at 257* (citing *In re Grand Jury Application*). I note also that plaintiff's request the relief now sought is likely premature, since her motion does not identify any effort on her part to convince federal law enforcement officials in the Northern or Western Districts of New York to investigate her claims.

[*33] IV. SUMMARY AND CONCLUSION

Because many of the relevant events, including most of the more recent incidents, at issue in plaintiff's civil rights complaint occurred in the Western District of New York, and several of the likely non-party witnesses reside and work there, and further given that district's familiarity with plaintiff's prior actions and the interplay between a case dismissed for failure to prosecute and plaintiff's claims in this action, I find it appropriate to discount plaintiff's choice of forum and transfer this action to that district. Reviewing the remaining cross-motions before the court, I find no basis to order impanelment of a special grand jury or appointment of a special prosecutor, nor do I find any reason to override this court's prior ruling that the defendants are entitled to representation by the Office of the New York State Attorney General, and therefore deny both of those motions. I will, however, defer ruling on plaintiff's application for an order compelling discovery for review by the transferee court. It is therefore hereby

ORDERED as follows:

1) Plaintiff's motion for an order disqualifying the New York State Attorney General and Assistant [*34] Attorney General Douglas J. Goglia from representing the defendants in this action, and for an order of protection, (Dkt. Nos. 115, 120) is DENIED.

2) Plaintiff's application for an order appointing a special prosecutor and/or impaneling a special grand jury to investigate her claims in this action (Dkt. No. 115) is DENIED.

3) Defendants' motion for an order transferring this case to the Western District pursuant to *28 U.S.C. § 1404(a)* (Dkt. No. 123) is GRANTED.

4) Following the expiration of ten (10) days, as required by Northern District of New York *Local Rule 83.6*, the clerk of this court is hereby directed to transfer certified copies of this opinion and of the docket entries in this case, in conjunction with the original file in this matter, to the Western District of New York.

5) The clerk is also directed to terminate plaintiff's motion to compel (Dkt. No. 124) from the Northern District docket, in anticipation that the motion will be addressed by the transferee court, the Western District.

6) The clerk is directed to promptly forward copies of this order to the plaintiff, by ordinary mail, and to defendants' counsel electronically.

Dated: June 30, 2006

[*35] Syracuse, NY

David E. Peebles

U.S. Magistrate Judge