# Exhibit 4

3 of 3 DOCUMENTS

UNITED BANK OF KUWAIT PLC, Plaintiff, v. INTERSTATE/JOHNSON LANE CORP., f/k/a INTERSTATE SECURITIES CORP., Defendant

No. 91 Civ. 3689 (MBM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1991 U.S. Dist. LEXIS 15057

October 21, 1991, Decided
October 22, 1991, Filed

**COUNSEL:** [*1] JOSEPH DIBENEDETTO, ESQ., THOMAS E. HONE, ESQ., Winston & Strawn, Attorneys for Plaintiff, New York, New York.

ROBERT F. HERRMANN, ESQ., PENINA P. GOLDSTEIN, ESQ., Menaker & Herrmann, Attorneys for Defendant, New York, New York.

**JUDGES:** Michael B. Mukasey, United States District Judge.

**OPINION BY:** MUKASEY

**OPINION**

OPINION AND ORDER

Defendant, Interstate/Johnson Lane Corporation ("IJL"), moves to transfer this diversity action to the United States District Court for the Western District of North Carolina. For the reasons set forth below, defendant's motion is granted.

I

Plaintiff, United Bank of Kuwait ("UBK"), is a British Bank whose sole office in the United States is located in this District. On December 3, 1987, UBK extended a $14 million line of credit to Congress Mortgage Corporation, a mortgage lender and broker located in West Palm Beach, Florida. Congress drew against the line of credit, and used the funds to originate home mortgage loans. The loans were then pooled and sold to the Government National Mortgage Association ("GNMA"), which issued a GNMA mortgage-backed security in exchange for each pool. UBK asserts that the line of credit was secured by the mortgage-backed securities issued to Congress [*2] by GNMA. UBK claims defendant IJL is the fraudulent transferee of the GNMA securities that were supposed to provide collateral for its loan to Congress.

Defendant IJL, a North Carolina corporation, is a brokerage firm headquartered in Charlotte, North Carolina. In March 1988, IJL and Congress executed a contract, the Master Repurchase Agreement, pursuant to which Congress agreed to sell GNMA securities to IJL. In May 1989, Congress sold to IJL the four GNMA securities which UBK claims secured the line of credit. Shortly thereafter, Congress defaulted on the UBK loan, and, because of a severe liquidity shortage, was eventually placed in receivership at the behest of the State of Florida Department of Banking and Commerce. UBK then sued to enforce the terms of the line of credit, and obtained judgments against Congress for an amount in excess of $5 million, and against William Pace, the principal of Congress, for $5 million. Both judgments remain unsatisfied.

The crux of UBK's claim against IJL is that IJL's officers knew, or should have known, about UBK's security interest in the four mortgage-backed securities purchased from Congress in May 1989. UBK claims that in purchasing the [*3] securities, IJL participated in fraud and other tortious conduct. Alleging conversion, aiding and abetting fraud, wrongful transfer, wrongful receipt of property, and negligence, UBK began this suit in the Supreme Court of the State of New York to recover $4.2 million, the value of the securities. IJL removed the action to this court based on diversity of citizenship, and has moved to transfer venue to the Western District of North Carolina.

II

*28 U.S.C. § 1404*, which governs transfers of venue, provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"*Section 1404(a)* is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' A motion to transfer under *§ 1404(a)* thus calls on the District Court to weigh in the balance a number of case-specific factors." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). [*4] The factors that determine the propriety of transfer include: (1) the place where the operative events occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the cost of obtaining witnesses' presence; (6) the location of records and documents; (7) a forum's familiarity with the governing law; (8) trial efficiency; and (9) the interests of justice. *Don King Productions, Inc. v. Douglas*, 735 F. Supp. 522, 533 (S.D.N.Y. 1990).

In the transfer analysis, plaintiff's choice of forum is entitled to "substantial consideration." *A. Olinick & Sons v. Dempster Brothers, Inc.*, 365 F.2d 439, 444 (2d Cir. 1966); *Intercontinental Monetary Corp. v. Performance Guarantees Inc.*, 705 F. Supp. 144, 151 (S.D.N.Y. 1989). Hence, the burden is on the defendant to make a clear and convincing showing that transfer is proper. *Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979); *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967) [*5] (Weinfeld, J.). In this case, the defendant has carried its burden.[1]

> 1  The party seeking transfer must first demonstrate that the action could originally have been brought in the transferee district. Defendant resides in Charlotte; therefore, the action could originally have been brought in the Western District of North Carolina. *28 U.S.C. § 1391*.

Here, plaintiff's choice of forum is entitled to less weight because the operative facts have little or no material connection to this forum. *Firestone v. Galbreath*, 722 F. Supp. 1020, 1030 (S.D.N.Y. 1989); *Matra Et Manurhin v. International Armament Co.*, 628 F. Supp 1532, 1536 (S.D.N.Y. 1986). UBK does not allege that any business relationship existed between itself and IJL. Nor are UBK's dealings with Congress at issue. Instead, the focus of this litigation will be the knowledge and behavior of IJL's officers in Charlotte, and, in particular, the transaction whereby the four GNMA securities were transferred from Congress [*6] in West Palm Beach to IJL in Charlotte. Thus, all the operative events took place in North Carolina and Florida, and have little or no connection to the Southern District of New York, the transferor forum.

Moreover, because inquiry will focus on the behavior of IJL's officers and whether they were aware of UBK's alleged security interest, it is IJL that is in possession of the bulk, if not all, of the relevant evidence. UBK, on the other hand, does not assert that it possesses any documentary evidence regarding the relationship between Congress and IJL. The only other significant potential source of information is Congress, and, because Congress is located in Florida, any evidence from its employees will have to be provided in a place distant from where they live, whether this action is heard here or in North Carolina. Because IJL's headquarters in Charlotte, North Carolina is the main source of the relevant records and documents, transfer would facilitate access to evidence. *See Firestone*, 722 F. Supp. at 1030.

I next turn to "the most significant factor, . . . the convenience of the . . . witnesses." *Nieves v. American Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988); [*7] *Saminsky v. Occidental Petroleum Corp.*, 373 F. Supp. 257, 259 (S.D.N.Y. 1974). A party seeking transfer based on convenience of the witnesses must identify the witnesses and make a general statement of what their testimony will cover. *Factors Etc., Inc.*, 579 F.2d at 218. IJL has done just that, identifying seven potential witnesses who have personal knowledge of its transactions with Congress. (Harris Aff. paras. 4, 5) All of these witnesses live in the vicinity of Charlotte. (Harris Aff. para. 5) UBK's attorneys do not specify whether or not they plan to call witnesses with personal knowledge of the transaction at issue but, if they do, the witnesses will almost certainly be from North Carolina or Florida, where the operative events occurred. UBK does not assert that any employee from its New York office, or any New York resident, will give testimony regarding the relationship between Congress and IJL. Because the essential witnesses in this case appear to be located exclusively in Charlotte, North Carolina, this factor weighs heavily in favor of transfer. *Nieves*, 700 F. Supp. at 772 (transfer to Puerto Rico in case where [*8] all witnesses lived in Puerto Rico); *Troyer v. Karcagi*, 488 F. Supp. 1200, 1207 (S.D.N.Y. 1980) (where material events and circumstances occurred in Ohio, transfer to Ohio held appropriate despite presence of two witnesses in New York).

In addition to facilitating access to evidence and easing the burden on witnesses, transfer will almost certainly result in a significantly speedier resolution of the action. As defendant correctly points out, the Southern District of New York, has one of the most congested calendars in the country, while the Western District of

1991 U.S. Dist. LEXIS 15057, *

North Carolina has a comparatively lighter docket. *See 1989 Annual Report of the Director of the Administrative Office of the United States Courts.* Thus, disposition will most probably be faster if the action is transferred. While this is not by any means crucial, it is a factor to be weighed in considering a motion to transfer. *A. Olinick & Sons, 365 F.2d at 445.*

UBK argues that it will be inconvenienced by transfer to North Carolina. It is indeed true that its offices and employees are located in New York. However, as already noted, the crucial witnesses and the bulk of the [*9] evidence are located in Charlotte, North Carolina. UBK's business activities are not in question; hence, the evidence that has to be provided from its offices in New York is minimal. UBK will not be unduly inconvenienced by transfer to the Western District of North Carolina.

Transfer will serve the convenience of parties and witnesses, and is in the interest of justice; therefore, the Clerk is directed to transfer this action to the Western District of North Carolina.

SO ORDERED.