# Exhibit 5

3 of 9 DOCUMENTS

WELLQUEST INTERNATIONAL, INC., Plaintiff, -v- GENESIS INTERMEDIA.COM, INC., VITAFREE.COM, INC., DOUG GRAVINK and GARY HEWITT, Defendants.

00 Civ. 6558 (RCC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 16757

October 17, 2001, Decided
October 18, 2001, Filed

**DISPOSITION:** [*1] Defendants' motion pursuant to 28 U.S.C. § 1404(a) was granted. The case was transferred to the United States District Court for the Central District of California.

**COUNSEL:** For WELLQUEST INTERNATIONAL, INC., plaintiff: James E. Daniels, Charles von Simson, Hall, Dickler, Kent, Goldstein & Wood, L.L.P., New York, NY.

**JUDGES:** Richard Conway Casey, U.S.D.J.

**OPINION BY:** Richard Conway Casey

**OPINION**

**OPINION AND ORDER**

Richard Conway Casey, U.S.D.J.

Plaintiff WellQuest International, Inc. ("WellQuest") brings this action asserting common law claims for misappropriation of trade secrets, breach of contract, breach of fiduciary duty and unjust enrichment, as well as claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and under the New York General Business Law, N.Y.G.B.L. §§ 349-50. Defendants Genesis Intermedia.com, Inc. ("Genesis"), VitaFree.com, Inc. ("VitaFree"), Doug Gravink ("Gravink") and Gary Hewitt ("Hewitt") now move to dismiss the Amended Complaint on the grounds of lack of personal jurisdiction and improper venue, or in the alternative, to transfer the matter to the United States District Court for the Central District of California. [1] For the reasons set forth below, this case is hereby transferred, in the interest of justice, to the Central District of California.

   1  Defendants moved to dismiss the original Complaint on the same grounds as those asserted here. After plaintiff amended, defendants renewed their motion and submitted additional briefing directed at the new allegations.

[*2] I. BACKGROUND

The following facts are taken from plaintiff's Amended Complaint. WellQuest develops and sells products through "direct response advertising," a technique that allows consumers to respond directly to toll-free telephone numbers placed in radio, television and print advertisements. Am. Compl. P 1. Among the products marketed by WellQuest in this manner is EnerX, a herbal male potency supplement. Id. P 2.

In March 1999, defendants Hewitt and Gravink on behalf of Genesis, a media purchasing company, offered to procure television advertising time for WellQuest. Id. P 3. [2] After engaging Genesis as its media purchasing agent, WellQuest began to share with Genesis alleged proprietary information concerning the profitability of the EnerX advertisements. Id. P 5. According to WellQuest, Genesis disclosed that data to VitaFree, the marketer of Passion ZX, a directly competitive herbal male potency supplement. Id. P 7. VitaFree allegedly then used the information to compete with WellQuest by engaging in a nationwide campaign of false advertising. Id. P 9.

   2  Hewitt is the Genesis President of Marketing and Distribution. Hewitt Decl. P 1. Gravink is the Genesis President of Media and Distribution. Gravink Decl. P 1.

[*3] As set forth in the Amended Complaint, WellQuest is a New York corporation with its principal place of business in New York. *Id.* P 11. Genesis is a Delaware corporation with its principal place of business in Van Nuys, California. *Id.* P 12. VitaFree is a California corporation with its principal place of business in San Diego, California. *Id.* P 13. Both Gravink and Hewitt are California residents. *Id.* PP 14-15.

Both parties also have submitted affidavits bearing on jurisdictional issues. According to those submissions, neither Genesis nor VitaFree is qualified to do business in New York, and does not have any offices, employees, bank accounts or physical assets in New York. Hewitt Decl. P 2; Gravink Decl. P 2; Nelson Decl. P 2. Hewitt and Gravink reside in California and do not maintain any residences or offices in New York, nor do they regularly travel to New York for business. Hewitt Decl. P 3; Gravink Decl. P 3. They conduct their business out of Genesis' offices in California. *Id.*

WellQuest maintains an office in Thousand Oaks, California, which was the primary place of contact for Genesis with respect to this dispute. Hewitt Decl. P 4; Gravink Decl. P 4. [*4] The negotiations between WellQuest and Genesis took place exclusively in person in California, or telephonically or through e-mail sent from California by Genesis to WellQuest. Hewitt Decl. P 6; Gravink Decl. P 6. Genesis purchased the media spots for WellQuest from its location in California. Hewitt Decl. P 8; Gravink Decl. P 8. Genesis ran 165 media spots for WellQuest, of which 11 were broadcast in New York on two television stations. *Id.* Genesis billed WellQuest $ 59,420 for the spots, of which approximately $ 5,000 was attributable to the New York broadcasts. *Id.* Genesis initially sent the invoices for these services to WellQuest in New York but later was instructed by WellQuest to submit the invoices to its California office. Hewitt Decl. P 10; Gravink Decl. P 10.

Despite the defendants' location in California, WellQuest contends that jurisdiction is appropriate here because the defendants have the following contacts with New York: (1) upon information and belief, Genesis purchases media time in New York in the course of its business, *see* Pl. Mem. at 3; (2) Genesis installed and maintains an advertising kiosk in a mall in Amherst, New York, *see id.* at 4; (3) [*5] VitaFree solicits business in New York and engaged in a false advertising campaign in part in New York, *see* Pl. 2d Mem. of Law at 3; and (4) Hewitt and Gravink sent faxes and e-mails to employees in WellQuest's New York offices and once attended a meeting in New York, *see id.* at 4.

Even if these contacts were sufficient to establish personal jurisdiction over the defendants in this forum, the interest of justice clearly favors transfer to the Central District of California, where the majority of events giving rise to this dispute occurred.

II. DISCUSSION

Section 1404(a) of Title 28 provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden is on the moving party to make a clear and convincing showing that transfer is proper. *See Wechsler v. Macke Int'l Trade, Inc., 1999 U.S. Dist. LEXIS 19800,* No. 99 Civ. 5725 (AGS), 1999 WL 1261251, at *2 (S.D.N.Y. Dec. 27, 1999); *see also Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978).*

The preliminary inquiry [*6] is whether the action "might have been brought" in the district to which the transfer is requested. 28 U.S.C. § 1404(a). In other words, jurisdiction and venue must be proper in the transferee forum. *Wechsler*, 1999 WL 1261251 at *2. As defendants concede, *see* Def. Mem. at 20, they are amenable to personal jurisdiction in the Central District of California because both Hewitt and Gravink reside in that state (in Los Angeles County and Ventura County, respectively) and both VitaFree and Genesis maintain their principal places of business there (in San Diego and Van Nuys, respectively). *See* Am. Compl. PP 11-15; Hewitt Decl. P 3; Gravink Decl. P 3.

Venue also would be proper in the Central District of California pursuant to the general venue statute governing federal question cases, 28 U.S.C. § 1391(b). [3] That statute provides, in pertinent part, that an action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State ...." *Id.* For venue purposes, a corporation resides in "any judicial district in which it is subject to personal jurisdiction at the time the [*7] action is commenced," 28 U.S.C. § 1391(c), while natural persons are deemed to reside where they maintain their permanent residence or legal domicile. *See, e.g.,* 15 Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. 2d § 3805 (1986). Given that all defendants reside in California as set forth above, venue is permissible under § 1391(b) in either the Southern or Central District of California.

> 3 Although defendants originally invoked subsection (a) of the venue statute, which is applicable to diversity cases, subsection (b) became the relevant provision after WellQuest amended its complaint to include a claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

Once it is determined that the proposed judicial district satisfies the personal jurisdiction and venue re-

Case 1:07-cv-03747-PKC    Document 11-6    Filed 10/05/2007    Page 4 of 6

Page 3
2001 U.S. Dist. LEXIS 16757, *

quirements, the Court then must assess whether the transfer will promote convenience and fairness. *See Orb Factory Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998)* [*8] (citing *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997)*). Courts generally consider the following factors: (1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) the trial efficiency and the interests of justice based on the circumstances. *See id.; see also Intria Corp. v. Intira Corp., 2000 U.S. Dist. LEXIS 17039*, No. 00 Civ. 7198 (AGS), 2000 WL 1745043, at *2 (S.D.N.Y. Nov. 27, 2000). After examining these factors, the Court is convinced that transfer to the Central District of California is warranted here.

A. *Convenience of the Witnesses*

This factor is generally accorded significant weight. *See Intria Corp.*, 2000 WL 1745043 at *3 ("The convenience of witnesses may be the most important factor in the transfer analysis under *Section* [*9] *1404(a)*."). Courts generally require the moving party to set forth the probable witnesses who will be inconvenienced as well as the nature of their testimony. *See id.* at *3. All of the defense witnesses reside or are located in California. The list includes Hewitt, Gravink and Thomas C. Nelson, the President of VitaFree, all of whom have personal knowledge of the transactions at issue. *See* Gravink Decl. P 15; Hewitt Decl. P 15; Nelson Decl. P 7. Defendants also name three witnesses working in WellQuest's California office -- Tony Hoffman, Mark Fanjory and Richard Cosege -- who were involved in the project, as well as Clem Patafio, a Genesis employee. *See id.; see also* Gravink Rep. Decl. P 10; Hewitt Rep. Decl. P 11. Finally, defendants plan to call non-party media brokers from Maximum Coverage Media in California who have knowledge of the media spots purchased by Genesis on behalf of VitaFree. *See* Gravink Rep. Decl. P 10; Hewitt Rep. Decl. P 11.

In contrast, WellQuest points only to two unnamed "principal witnesses" who are in New York. Pl. Mem. at 20. Presumably one of the potential New York witnesses is Michael Ackerman, a WellQuest principal who submitted an affidavit [*10] in support of plaintiff's opposition to the instant motion. Although Mr. Ackerman maintains his principal office in the New York headquarters, he travels regularly to California in connection with WellQuest business. *See* Gravink Decl. P 15; Hewitt Decl. P 15. [4] Mr. Ackerman therefore will not be greatly inconvenienced by appearing in California. Accordingly, the convenience of the witnesses strongly favors transfer to the Central District of California.

    4  Defendants also point out that the affidavit of Mr. Ackerman was sworn to and notarized in Ventura County, California.

B. *Location of Relevant Documents*

Defendants contend that the majority of the relevant records are located in California. *See* Gravink Decl. P 16; Hewitt Decl. P 16. Although WellQuest does not dispute this fact, WellQuest points out that some materials are housed in New York, and that the California documents are easily transportable. Pl. Mem. at 20. Thus this factor does not weigh in defendants' favor. *See Intria Corp.*, 2000 WL 1745043 [*11] at *4 ("A defendant's assertion that documents are located in the transferee forum is entitled to little weight unless the defendant makes a detailed showing as to the burden it would incur absent a transfer.")

C. *Convenience of the Parties*

Plaintiff argues that transfer would merely shift the inconvenience from defendants to itself, and thus this factor should not be accorded any weight. *See, e.g., Wechsler*, 1999 WL 1261251 at *6 ("The parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party."). In this case, however, the Court notes that WellQuest maintains a California office, which served as the defendants' primary place of contact with plaintiff. *See* Gravink Decl. P 4; Hewitt Decl. P 4. In contrast, defendants maintain no offices, employees or physical assets in New York. *See* Gravink Decl. P 2; Hewitt Decl. P 2. Thus, this factor favors defendants.

D. *The Locus of the Operative Facts*

The location of the operative events is a "primary factor" in a transfer motion. *ZPC 2000, Inc. v. The SCA Group, Inc., 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000)* [*12] (quoting *Smart v. Goord, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)*). Defendants here have set forth sufficient evidence to establish that the operative facts took place predominantly in California, particularly with respect to plaintiff's common law claims for breach of contract, misappropriation of trade secrets, breach of fiduciary duty and unjust enrichment. First, the negotiations leading to the agreement between WellQuest and Genesis were conducted exclusively in person in California, or telephonically or through e-mail sent from California by Genesis to WellQuest. *See* Gravink Decl. P 6; Hewitt Decl. P 6. The record also indicates that throughout the

Case 1:07-cv-03747-PKC    Document 11-6    Filed 10/05/2007    Page 5 of 6

Page 4
2001 U.S. Dist. LEXIS 16757, *

course of the parties' dealings, Genesis primarily interacted with WellQuest through its California office. *See* Gravink Decl. P 4; Hewitt Decl. P 4. Plaintiff offers no competent proof to the contrary. [5] It is also undisputed that Genesis purchased the media spots for WellQuest from Genesis' office in California, and of those only a small portion were broadcast in New York. *See* Gravink Decl. P 8; Hewitt Decl. P 8. [6]

> 5 Plaintiff's rebuttal evidence derives from a six-paragraph affidavit submitted by Mr. Ackerman, which contains only generalized statements of Genesis' interaction with WellQuest's New York office and fails to rebut much of the evidence presented by defendants.
>
> [*13]
>
> 6 In addition, the alleged false VitaFree advertisements, although appearing in New York among other places, were placed through an independent media-buying agency in California. Hewitt Rep. P 10.

Plaintiff argues that there was some communication between Genesis and WellQuest's New York office. Specifically, plaintiff states that Mr. Ackerman once met with Gravink and Hewitt in New York and that those individuals sent an unspecified number of faxes and e-mails to employees based in the New York office. Ackerman Aff. PP 5-6. However, the unchallenged evidence submitted by defendants makes clear that this meeting occurred three years prior to the events at issue here, and did not involve either WellQuest or Genesis. Hewitt Rep. Decl. P 5; Gravink Rep. Decl. P 5. Rather, the individuals met as representatives of different companies. *Id.* In addition, both Gravink and Hewitt specifically state that they sent less than five faxes to the WellQuest New York office in connection with the media campaign, all of which related to payment and accounting issues, not operational issues. Hewitt Rep. Decl. [*14] P 4; Gravink Rep. Decl. P 4. Significantly, Mr. Ackerman then instructed Genesis to send those payments to WellQuest in California. *Id.; see also* Hewitt Decl. P 10; Gravink Decl. P 10. Thus, even assuming some degree of interaction between Genesis and WellQuest's New York office, from the record before the Court it is clear that the majority of the operative interactions between the parties occurred in California.

Plaintiff argues that transfer is inappropriate because its trade secrets were developed and analyzed here in New York. Pl. Mem. at 20. However, this fact is tangential to plaintiff's cause of action. A claim for misappropriation of trade secrets centers on the existence of an unauthorized disclosure. *See, e.g., Enhanced Computer Solutions, Inc. v. Rose*, 927 F. Supp. 738, 740 (S.D.N.Y. 1996) ("Trade secret claims often are grounded upon a defendant's breach of a duty of trust or confidence to the plaintiff through improper disclosure of confidential material. The defendant's breach of duty is the gravamen of such trade secret claims ...."); 3 Roger M. Milgrim, *Milgrim on Trade Secrets* § 13.04 at 13-79 (2000) ("Where the gist of the tort is disclosure [*15] of a trade secret in violation of an obligation of confidentiality, the claim likely arises at the time of disclosure."). Here, there is no indication that the alleged improper disclosure -- *i.e.*, Genesis' transfer of confidential WellQuest information to VitaFree -- occurred in New York; rather, the record demonstrates that all interaction between Genesis and VitaFree occurred in California. Nelson Aff. P 8.

Accordingly, the locus of the operative facts with respect to the claims at issue here clearly favors transfer to the Central District of California.

E. *Availability of Process to Compel Attendance of Witnesses*

WellQuest argues that compelled witnesses are as likely to come from New York as from California. Pl. Mem. at 20. However, as discussed *supra*, the record reflects that the majority of the witnesses are located in California, including all of the non-party witnesses. WellQuest contends that "in any event, deposition testimony is an available alternative to live testimony." *Id.* However, courts and, undoubtedly, juries generally prefer live testimony at trial. *See Lever Bros. Co. v. Procter & Gamble, Co.*, 23 F. Supp. 2d 208, 211 (D. Conn. 1998) [*16] (transferring action in part because of the preference for having live witnesses testify versus reading deposition testimony into the record or using videotaped deposition testimony). Thus this factor also favors defendants.

F. *Relative Means of the Parties*

This factor does not favor any party.

G. *Forum's Familiarity with the Controlling Law*

The Amended Complaint contains common law claims for breach of contract, breach of fiduciary duty, unjust enrichment and misappropriation of trade secrets, as well as a claim under the Lanham Act and a claim under the New York General Business Law. Although this Court has more experience with issues of New York statutory law, both this forum and the Central District of California are equally familiar with federal law pursuant to the Lanham Act. It is as yet undetermined what law will apply to the common law claims. Accordingly, this factor does not favor transfer, although it does not provide a significant impediment to adjudication in California. *See Intria Corp.*, 2000 WL 1745043 at *8 (transferring action from New York to California even though

plaintiff alleged claims under the New York General Business Law, federal [*17] law and as yet undetermined common law).

### H. Weight Accorded to Plaintiff's Choice of Forum

Plaintiff's choice of forum is generally given "substantial consideration." *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995). However, this consideration is lessened where, as here, the operative facts occurred largely outside the forum where the case was filed. *See, e.g., Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991) ("Where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance.") (citations omitted). As discussed, much of the interaction between the parties occurred in California through WellQuest's California office. Therefore, plaintiff's choice of forum, while certainly entitled to significant weight in the Court's analysis, cannot be considered dispositive.

### I. Trial Efficiency and the Interests of Justice

Transfer is appropriate in order to facilitate discovery when: (i) the action is in the early stages of litigation; and (ii) the [*18] transferee district is the place where the operative events occurred and where many of the witnesses and documents are located. *Wechsler*, 1999 WL 1261251 at *10. Here, discovery has been stayed pending disposition of this motion, so the parties are at a relatively early stage of the litigation, and the majority of the documents and witnesses are located in California. Because the non-party witnesses also hail from California, depositions taken pursuant to *Fed. R. Civ. P. 45* will have to be conducted there. Indeed, plaintiff's initial discovery requests seek discovery in California and specify the California office of plaintiff's counsel as the location for production. Def. Rep. Mem. at 13.

More importantly, however, transfer would further the interests of justice because it is unclear whether this Court can exercise personal jurisdiction over the defendants here, particularly defendants Gravink and Hewitt. The only evidence proffered by WellQuest against the individual defendants is that they sent an unspecified number of e-mail and faxes to WellQuest's New York office and once attended a meeting with Mr. Ackerman in New York. However, as discussed *supra*, that [*19] meeting was unrelated to the instant dispute and thus plaintiff's claims do not arise from that act as required under the New York long-arm statute. *See N.Y.C.P.L.R. § 302(a)*.

Furthermore, courts generally agree that, without more, the mere sending of faxes or other communications into New York does not satisfy the "transaction of business" prong of the statute. *See Worldwide Futgol Assocs., Inc. v. Event Entertainment, Inc.*, 983 F. Supp. 173, 177 (S.D.N.Y. 1997) (noting that telephone and fax contacts are generally insufficient to predicate jurisdiction on *N.Y.C.P.L.R. § 302(a)(1)*); *PaineWebber Inc. v. The Westgate Group, Inc.*, 748 F. Supp. 115, 119 (S.D.N.Y. 1990) (holding that a series of frequent telephone calls and telecopies and one meeting in New York was an insufficient basis for personal jurisdiction); *see also Granat v. Bochner*, 268 A.D.2d 365, 702 N.Y.S.2d 262, 263 (1st Dep't 2000) ("Sending faxes and making telephone calls to this State are not, without more, activities tantamount to "transacting business" within the meaning of the aforecited long-arm statute."). Nor is there any indication that Gravink and Hewitt [*20] committed alleged tortious acts in New York, such as the improper disclosure of trade secrets, which would allow jurisdiction based on the commission of a tortious act in this State. *See N.Y.C.P.L.R. § 302(a)(2)*.

Consequently, the apparent absence of personal jurisdiction over those defendants also dictates in favor of transfer. *See Worldwide Futbol Assocs., Inc.*, 983 F. Supp. at 182 (holding that the "mere appearance of a colorable jurisdictional issue may be a factor in a court's decision to transfer venue under *28 U.S.C. § 1404(a)*" and transferring the action on that basis although the initial forum was not otherwise inconvenient).

### III. CONCLUSION

Taking into account all of the above factors, this Court is convinced that transfer to the Central District of California is warranted. The majority of the operative facts occurred in California, the witnesses are located there and all defendants will be subject to personal jurisdiction in that district. In addition, WellQuest's California office was defendants' primary place of contact with plaintiff with respect to this dispute. Accordingly, transfer is in the interest of justice and defendants' [*21] motion pursuant to *28 U.S.C. § 1404(a)* is granted. The Clerk of the Court is hereby directed to transfer this case to the United States District Court for the Central District of California.

Dated: October 17, 2001

New York, New York

SO ORDERED:

Richard Conway Casey, U.S.D.J.